Howard E. WOODLIN, Defendant
Below, Appellant,

v.

STATE of Delaware, Plaintiff
Below, Appellee.

No. 44, 2009.

Supreme Court of Delaware.

Submitted: June 2, 2010.
Decided: July 22, 2010.

Thomas D. Donovan, Esquire, Donovan & Hopkins, LLC, Dover, Delaware, for appellant.

Paul R. Wallace, Esquire (argued) and John Williams, Esquire, Department of Justice, Dover, Delaware, for appellee.

Before STEELE, Chief Justice, HOLLAND, BERGER, JACOBS and RIDGELY, Justices, constituting the Court en Banc.

HOLLAND, Justice:

The defendant-appellant, Howard E. Woodlin ("Woodlin"), was indicted on one count of Rape in the First Degree, one count of Dangerous Crime Against a Child, three counts of Endangering the Welfare of a Child, one count of Unlawful Sexual Contact in the First Degree, one count of Incest, and two counts of Indecent Exposure in the First Degree. Following a jury trial in the Superior Court, Woodlin was found guilty on all counts. For his conviction of Rape in the First Degree, Woodlin was sentenced to incarceration at Level 5 for the balance of his natural life. He was sentenced to various periods of incarceration for the other convictions.[1]

1. For the Dangerous Crime Against a Child conviction, Woodlin was sentenced to a mandatory term of twenty-five years of incarceration at Level 5. For the three convictions of Endangering the Welfare of a Child, he was sentenced to two years at Level 5, suspended for one year at Level 2. For Unlawful Sexual Contact in the First Degree, Woodlin was sentenced to nine months at Level 5. For Incest, he was sentenced to one month at Level 5. For the two convictions of Indecent Exposure in the First Degree, he was sentenced to one year at Level 5, suspended for one year at Level 1.

Woodlin has raised one issue in this direct appeal. He argues that it was an abuse of discretion by the trial judge to permit the admission into evidence of his minor daughter's interview with a Children's Advocacy Center ("CAC") forensic interviewer, Diane Klecan ("Klecan") under title 11, section 3507 of the Delaware Code. According to Woodlin, no foundation was laid regarding the perceived events or truthfulness of the out-of-court statement.

This appeal is part of a trilogy of cases that were consolidated for oral argument *en Banc* because they all involved recurring problems with regard to the admission of evidence under section 3507.[2] The issue in Woodlin's appeal relates to the proper foundational requirements that must be established before the prior statement of a witness can be admitted into evidence under section 3507. In this opinion, we review our precedents and provide additional guidance regarding the foundational requirements that must be established under section 3507 as a condition precedent to admissibility. We conclude there was no plain error and that the Superior Court's judgments of conviction must be affirmed.

### Facts

Woodlin and Tammy Campbell ("Campbell") are the parents of two children: Sarah, born in 2000, and Matthew, born in 2005.[3] While Sarah was living temporarily with Campbell's aunt, Barbara, Sarah disclosed to Barbara that she had been sexually assaulted by her father and that she had witnessed incidents of sexual contact between her parents.

Barbara took Sarah to the CAC in Kent County on September 24, 2007, and a recorded interview of then seven-year-old Sarah was conducted. Two days after the CAC interview, Campbell and Woodlin were arrested by the Delaware State Police. Campbell pled guilty to a charge of Rape in the Second Degree involving her daughter. Campbell was sentenced to twenty-five years of incarceration at Level V, suspended after serving ten years, for probation supervision.

At Woodlin's trial, Campbell testified that her daughter observed Woodlin licking her breasts on three occasions, and that Sarah saw Campbell touching Woodlin's penis three times. Campbell also testified that her daughter told her that Woodlin had touched the child "in her vagina area." While being interviewed by a Delaware State Police Detective, Woodlin stated that "whatever Campbell said is what happened."

Sarah testified at her father's 2008 trial. She acknowledged speaking with Klecan, the CAC forensic interviewer, about her father "[b]ecause he did something wrong to me." Sarah did not want to describe what her father did "[b]ecause it's nasty." After Sarah's direct trial testimony was completed, the videotaped CAC interview was admitted into evidence and played for the jury. There was no cross-examination.

### *Motion* In Limine *Denied*

Defense counsel for Woodlin filed a motion to exclude Sarah's recorded interview with Klecan. The basis for the motion was that the then seven-year-old complaining witness' statements during her CAC interview in 2007 were involuntary because the questioning technique employed by the forensic interviewer, Klecan, was "impermissibly suggestive." After hearing the State's response, the trial judge decided to

---

**2.** *See Stevens v. State,* 3 A.3d 1070 (Del.2010); *Blake v. State,* 3 A.3d 1077 (Del.2010).

**3.** The Court has assigned pseudonyms to the children pursuant to Supreme Court Rule 7(d).

view the DVD of the CAC interview before ruling on the motion.

Two days later, when Woodlin's jury trial commenced, the trial judge announced that he had viewed the taped interview, and found that the CAC questioning was "not the least bit suggestive or leading. It actually appeared to me to be very professionally done." The trial judge ruled that with one possible exception (a reference to whether the complaining witness' mother had touched the child's vagina) the taped CAC interview was admissible under section 3507.

After denying the motion to exclude Sarah's prior statement, the trial judge asked defense counsel if he wanted the reference to the mother's alleged conduct excluded, since the mother was not on trial. Defense counsel declined, and stated: "Your Honor, it would be the defense's position that if portions of the tape are going to come in, we'd ask that the entire portion come in."

### Trial Objection Denied

Woodlin's jury trial proceeded with the direct examination of the then eight-year-old complaining witness, Sarah, and Klecan, the CAC forensic interviewer. When Klecan's direct examination concluded, the State moved to admit the DVD of Klecan's interview of Sarah into evidence under section 3507 and requested permission to play the DVD for the jury. Woodlin's defense counsel objected to the admission of the CAC interview and stated: "I don't believe that they have met their criteria under 3507. I think there's still an issue as to voluntariness. I think there's still an issue where the court has to be satisfied that the statement was completely voluntary."

Following the State's response, the trial judge again found the complaining witness' prior out-of-court statement to be voluntary and ruled that the recorded CAC interview was admissible:

Now, so far as the admission of the statement, the requirements of 3507 are that the out-of-court statement be voluntary, that the witness testify about both the events perceived and the out-of-court statements and whether or not they are true and the witness be subject to cross-examination on the content of the statement and its truthfulness.

As for the voluntariness, I don't think there's any question there at all. It's clearly voluntary. I saw the statement myself. So in addition to that, and listening to the witness' testimony, it's clearly voluntary.

As to the second part, that the witness testify about both the events perceived in the out-of-court statement and whether or not they are true, the apparent difficulty of the child in answering the questions here is very similar to her initial reaction in the statement itself.

I'm satisfied that she testified to the point where she at least touched on the events, and she touched on the out-of-court statement, said it was true. I think she implicitly, at least, indicated here in court that the event was true. And I think that under the circumstances, I think her difficulty in testifying in detail in this court about the events is sincere, and she will be subject to cross-examination on the content of the statement and its truthfulness.

And also, the statement is a recorded statement that the jury will actually see. It's not somebody else summarizing or trying to characterize what the child said. They will see the child's actual words. So my finding is that the [DVD]—or let me put it this way: The statement is admissible. I don't think the [DVD] comes in separately.

### Issues on Appeal

On appeal, Woodlin's new attorney challenges the trial judge's determination that

the prior out-of-court statement of the child witness was admissible under title 11, section 3507. Woodlin argues that Sarah's trial testimony did not touch upon the events described in the CAC interview, and that she did not affirm the truthfulness of her prior recorded statement. These contentions were not presented to the trial judge. Woodlin's defense counsel only argued that Sarah's CAC statement should be found involuntary because of an alleged suggestive questioning technique employed by the interviewer. The new arguments now raised by Woodlin may only be reviewed on appeal for plain error.[4] The burden of demonstrating plain error is on Woodlin.[5]

### Section 3507 Foundational Requirements

Title 11, section 3507 of the Delaware Code provides:

(a) In a criminal prosecution, the voluntary out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value.

(b) The rule in subsection (a) of this section shall apply regardless of whether the witness' in-court testimony is consistent with the prior statement or not. The rule shall likewise apply with or without a showing of surprise by the introducing party.

Over the last several decades, the foundational requirements of section 3507 have been clarified as this Court has been called upon to construe that 1970 statute and reconcile it with a defendant's Sixth Amendment right of confrontation. The basic procedure for admitting a statement under section 3507 was first announced, five years after section 3507 was enacted, by this Court in *Keys v. State*.[6] In that 1975 decision, we held: "In order to offer the out-of-court statement of a witness, the Statute requires the direct examination of the declarant by the party offering the statement, as to both the events perceived or heard and the out-of-court statement itself."[7]

Three weeks later, we supplemented *Keys* in *Hatcher v. State*,[8] where we addressed another foundational requirement for the admission of a witness' statement pursuant to section 3507—voluntariness. In *Hatcher*, we held the offering party must establish that the out-of-court statement was voluntary, either during the direct examination of the witness or, if the witness denies that the statement was voluntary, on *voir dire*.[9] We also held that the trial judge "must be satisfied that the offering party has shown by a preponderance of the evidence that the statement was voluntarily made, and must render an explicit determination on the issue before admitting it for the jury's consideration."[10] In *Hatcher*, we recognized that after a section 3507 statement is admitted into evidence "any party may then present evidence on the voluntariness issue for consideration by the jury under appropriate instructions."[11]

---

4. Supr. Ct. R. 8; D.R.E. 103(d); *Wright v. State*, 980 A.2d 1020, 1023 (Del.2009); *Morgan v. State*, 962 A.2d 248, 254 (Del.2008); *Keyser v. State*, 893 A.2d 956, 960 (Del.2006).

5. *See Wright v. State*, 980 A.2d at 1023; *Flamer v. State*, 953 A.2d 130, 133 (Del.2008); *Brown v. State*, 897 A.2d 748, 753 (Del.2006).

6. *Keys v. State*, 337 A.2d 18 (Del.1975).

7. *Id.* at 20 n. 1.

8. *Hatcher v. State*, 337 A.2d 30, 32 (Del.1975).

9. *Id.*

10. *Id.* (internal citations omitted).

11. *Id.*

Six weeks after *Keys* was decided, we issued our decision in *Johnson v. State*.[12] As we later explained our holding in *Johnson:* "a witness' statement may be introduced [under section 3507] only if the two-part foundation [identified in *Keys* ] is first established: [by having] the witness testif[y] about both the events and whether or not they are true."[13] In *Ray v. State*, we also explained (and cited *Johnson* ) in holding in order to conform to the Sixth Amendment's guarantee of an accused's right to confront witnesses against him, the declarant must also be subject to cross-examination on the content of the statement as well as its truthfulness.[14]

In *Smith v. State*, we noted that for twenty years this Court had consistently reaffirmed its 1975 holdings in *Keys, Hatcher* and *Johnson*.[15] The same can be said for the last fifteen years. Today, we ratify and reaffirm those holdings once again.

In *Smith v. State*, we also considered the "subject to cross-examination" requirement of section 3507 from a timing perspective. In *Smith*, we held that section 3507 "requires not just the opportunity to cross-examine the declarant, but the opportunity to cross-examine the declarant about the out-of-court statement."[16] Therefore, we determined that the section 3507 statement must be offered into evidence no later than the conclusion of the direct examination of the declarant.

In *Smith*, we held that the offering party could interrupt the direct examination of the declarant "to introduce a [section] 3507 statement into evidence ... at any time prior to the conclusion of the declarant's direct testimony."[17] There, we further acknowledged that the offering party should be allowed as much flexibility as the statute permits. Nevertheless, we continued that the "introduction of a [section] 3507 statement cannot be timed so as to place any strategic burden on the non-offering party."[18]

### Sarah's Trial Testimony

At the time of her father's jury trial, Sarah was eight years old and a third grade elementary school student. During her direct examination at trial, Sarah said she remembered talking to Klecan, the CAC interviewer, and that she spoke to Klecan about "My daddy." When asked why she talked to Klecan on September 24, 2007 about her father, Sarah replied: "Because he did something wrong to me." Sarah also confirmed that no one made her talk to the CAC interviewer.

When Sarah was asked on direct examination, "What is it that your daddy did?" she initially replied, "I don't know." The prosecutrix then asked Sarah whether she really did not know or whether she did not want to tell. Sarah replied, "Don't want to tell you." Eight-year-old Sarah was then asked, "Why don't you want to tell me what your daddy did?" She answered, "Because it's nasty." Following this exchange, the trial testimony of Sarah was interrupted in order for the State to pres-

---

12. *Johnson v. State*, 338 A.2d 124 (Del.1975).

13. *See Ray v. State*, 587 A.2d 439, 443 (Del. 1991) ("... [S]ection 3507 requires the State to elicit testimony from the victim on direct examination as to the contents of her out-of-court statements and whether those statements were true."); *Feleke v. State*, 620 A.2d 222, 226–27 (Del.1993) ("First, the witness must testify as to the truthfulness of the statement.").

14. *Ray v. State*, 587 A.2d at 443 (citing *Johnson v. State*, 338 A.2d at 127).

15. *Smith v. State*, 669 A.2d 1, 7 (Del.1995).

16. *Id.* at 8.

17. *Id.*

18. *Id.*

ent additional foundational testimony from Klecan before seeking to introduce the DVD recording of Sarah's prior out-of-court statement under section 3507.

### No Plain Error

On appeal, Woodlin's new counsel argues that the section 3507 foundational requirements for admission of prior out-of-court statements were not met, because the direct testimony of the eight-year-old witness did not expressly state whether or not her 2007 CAC interview statements were true and her trial testimony did not touch upon the events discussed in the CAC interview. In the Superior Court, the pretrial written motion and the renewed trial motion by defense counsel to exclude the CAC interview, argued only that the child's responses were involuntary because of an alleged suggestive questioning technique. Even so, the trial judge's ruling was more expansive and expressly addressed all of the foundational requirements for admission of a prior out-of-court statement under title 11, section 3507.

The trial judge found that Sarah's direct testimony at least "implicitly" affirmed the truthfulness of her CAC statements and also touched upon the events described in her earlier CAC interview with Klecan. The record supports those findings. Sarah testified that her father did "something wrong" to her, and that "it's nasty." Thus, Sarah's trial testimony touched upon the events described in her prior out-of-court statement. As the trial judge found, Sarah's testimony also at least "implicitly" affirmed the truthful nature of her prior recorded statements because it was consistent with her CAC interview responses. Although Sarah was available for cross-examination about the content and the truthfulness of her prior statements, Woodlin's trial attorney declined to ask her any questions.

Woodlin has not carried his burden of persuasion to demonstrate plain error.

Our review of this Court's precedents reflects that the trial judge's entire bench ruling properly analyzed all of the foundational requirements for the admissibility of a prior statement under section 3507. Accordingly, we hold that the trial judge properly exercised his discretion in admitting the child complaining witness' prior out-of-court statement under section 3507.

### Conclusion

The judgments of the Superior Court are affirmed.