IN THE SUPREME COURT OF THE STATE OF DELAWARE

| | | |
|---|---|---|
| TYWAAN JOHNSON, | § | |
| | § | No. 164, 2015 |
| Defendant Below, | § | |
| Appellant, | § | Court Below: Superior Court |
| | § | of the State of Delaware, |
| v. | § | in and for New Castle County |
| | § | |
| STATE OF DELAWARE, | § | Cr. ID. No. 1007020056 |
| | § | |
| Plaintiff Below, | § | |
| Appellee. | § | |

Submitted: November 18, 2015
Decided: December 10, 2015

Before **HOLLAND**, **VAUGHN**, and **SEITZ**, Justices.

## <u>ORDER</u>

This 10th day of December, 2015, it appears to the Court that:

(1)     Tywaan Johnson was involved in a drug-deal turned armed-robbery and murder in 2010. For his role, Johnson was convicted of first degree murder, first degree robbery, second degree conspiracy, possession of a deadly weapon by a person prohibited, and two counts of possession of a firearm during the commission of a felony. Johnson appeals from the Superior Court's denial of his motion for postconviction relief in which he argued (a) his trial counsel was ineffective; (b) the State committed a *Brady* violation; (c) there was cumulative due process error; and (d) the Superior Court should have held an evidentiary

hearing. After careful review of the arguments and record on appeal, we find that Johnson's arguments are without merit, and affirm.

(2) To prevail on a claim of ineffective assistance of counsel, Johnson must meet the requirements announced in *Strickland v. Washington*:[1] (a) deficient attorney performance, i.e., counsel's performance fell below an objective standard of reasonableness, and (b) prejudice resulting from counsel's error.[2] A defendant bears a heavy burden to overcome the strong presumption that counsel's conduct falls within the wide range of reasonable conduct.[3] To show prejudice, Johnson must establish "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different."[4] We review the Superior Court's denial of a motion for postconviction relief for abuse of discretion.[5] "In discharging its appellate function, the Court must carefully review the record to determine whether competent evidence supports the court's findings of fact and whether its conclusions of law are not erroneous."[6] We review questions of law *de novo*.[7]

(3) Johnson argues that the Superior Court erred by denying his claim of ineffective assistance of counsel because trial counsel allegedly failed to

---

[1] 466 U.S. 668 (1984).
[2] *Hoskins v. State*, 102 A.3d 724, 730 (Del. 2014).
[3] *Id.*
[4] *Strickland*, 466 U.S. at 694.
[5] *Dawson v. State*, 673 A.2d 1186, 1190 (Del. 1996).
[6] *Id.*
[7] *Id.*

2

adequately cross examine Gregory Napier, one of Johnson's co-conspirators, concerning possible future benefits Napier would receive under a substantial assistance agreement with the State. Napier accepted a plea bargain where he agreed to testify against Johnson in exchange for a lighter sentence. Later, Napier entered into a substantial assistance agreement in which the State agreed to file a motion in the future to recommend a reduction in Napier's sentence to five years in exchange for his cooperation in other cases.

(4)     Johnson relies on *Moore v. Secretary Pennsylvania Department of Corrections*, where the Third Circuit found that trial counsel's performance was unreasonable because he failed to impeach a key witness about the reduction in his prison sentence and reduced charges secured in exchange for his testimony.[8] Unlike *Moore*, where trial counsel failed to undermine the key witness's credibility, Johnson's trial counsel *did* cross examine Napier extensively about his plea bargain. Specifically, trial counsel brought out on cross-examination that without the plea agreement and lighter sentence, Napier would face potential murder, robbery, firearm, and conspiracy charges, carrying sentences of life in prison plus eight years or death. Trial counsel adequately impeached Napier on the plea agreement, which served to undermine Napier's credibility as a witness.

---

[8] 457 F. App'x 170, 182 (3d Cir. 2012). In *Moore*, the trial counsel failed to raise that the witness's potential prison exposure was reduced from 60 to 20 years, and the charge against him reduced from first to third-degree murder in exchange for his cooperation. *Id.*

3

(5)     Even if Johnson could demonstrate that the failure to question Napier about his substantial assistance agreement was objectively unreasonable, he has not shown how the result of his trial would have been different.  Both parties questioned Napier about his plea agreement, and the jury was made aware that he had already received a lighter sentence in exchange for his truthful testimony.  Further examination about the substantial assistance agreement would have been cumulative.  The State had also not sought a sentence reduction at the time of trial.  The Superior Court did not err in finding that Johnson failed to meet either prong of the *Strickland* standard.

(6)     Johnson next argues the Superior Court erred in denying his *Strickland* claim for trial counsel's failure to object to the admission under 11 *Del. C.* § 3507 of Napier's out-of-court statement.  Johnson claims the statement was involuntary.  When Napier was brought in for questioning, the police suggested things would become more difficult for his family if he did not cooperate.  Napier then confessed his involvement and identified Johnson as a co-conspirator.

(7)     Under 11 *Del. C.* § 3507, "the voluntary, out-of-court prior statement of a witness who is present and subject to cross-examination may be used as affirmative evidence with substantive independent testimonial value."  According to the statute, the statement must be voluntary.  Prior to any questioning by the detective, Napier was given a *Miranda* warning.  During the interview, the

4

detective did bring up Napier's children and family, but he did not threaten them or threaten to take them away. He simply suggested that Napier cooperate with police to avoid a greater burden on his family. Napier also testified at trial that his statement was voluntary.[9] The Superior Court did not err in finding that trial counsel's failure to object to the admission of Napier's § 3507 statement was objectively reasonable and did not prejudice Johnson.

(8) Johnson next argues that the Superior Court erred in denying his claim of ineffective assistance of counsel for failing to request a mistrial when the police officer who interviewed Johnson after his arrest testified that Johnson "terminated the interview." According to Johnson, the answer implied that Johnson asked for an attorney, which created an inference of guilt.

(9) A mistrial is appropriate "only when there is manifest necessity or the ends of public justice would be otherwise defeated."[10] "The remedy of a mistrial is mandated only when there are no meaningful and practical alternatives to that remedy."[11] The Superior Court examined trial counsel's lack of objection under the three-prong test articulated in *Hughes v. State* and *Hunter v. State*: (1) the closeness of the case; (2) the centrality of the issue affected by the alleged error;

---

[9] *See Gray v. State*, 2015 WL 5926151, at *5 (Del. Oct. 9, 2015) (witness statement admissible under § 3507 when witness testified his statement was voluntary).

[10] *Smith v. State*, 963 A.2d 719, 722 (Del. 2008) (internal quotations omitted).

[11] *Revel v. State*, 956 A.2d 23, 27 (Del. 2008) (internal quotations omitted).

and (3) the steps taken to mitigate the effects of the error.[12] The Superior Court found that the comment did not require a new trial. We agree.

(10) When questioning the police officer, the prosecutor asked if Johnson "terminated the interview," to which he replied "yes."[13] Trial counsel did not object but instead requested a sidebar conference to avoid drawing more attention to the comment. Trial counsel's strategic decision not to object was a reasonable trial strategy. When the prosecutor again stated during closing argument that Johnson "ended the interview," trial counsel objected and the court overruled the objection. We agree with the trial court's analysis that the State's comment was general enough not to imply guilt on Johnson's behalf, negating the need for a mistrial. Therefore, counsel's failure to object was not objectively unreasonable.

(11) Johnson also contends that the Superior Court erred in denying his claim of ineffective assistance of counsel for failure to investigate Jamal, an unidentified individual who Johnson (and only Johnson) alleges was at the scene of the crime and may have been helpful to his case.[14] Trial counsel took steps to locate Jamal by hiring a private investigator, but could not locate him.[15] The State also had no information about Jamal. To render effective representation, trial

---

[12] *Hunter v. State*, 815 A.2d 730, 737-38 (Del. 2002); *Hughes v. State*, 437 A.2d 559, 571 (Del. 1981).

[13] App. to Opening Br. at 121 (Det. Harris' Trial Test.).

[14] Johnson has also not satisfied the prejudice prong of *Strickland* by showing a reasonable probability that more information about Jamal would have led to a different result at trial.

[15] App. to Opening Br. at 131 (Aff. of Michael C. Heyden, Esq. in Response to R. 61 Pet.).

counsel was not required to secure the testimony of every conceivable witness.[16] In this case, he took reasonable steps to locate Jamal, but was unsuccessful. His lack of success does not render his performance deficient.

(12) Johnson next argues that the Superior Court erred in denying his claim that the State committed a *Brady* violation by failing to disclose information about Jamal. The Superior Court found Johnson's *Brady* violation procedurally barred under Rule 61(i)(3),[17] because he failed to assert the ground for relief in the proceedings leading to his conviction. Johnson also failed to meet the miscarriage of justice exception to the procedural bar which requires a colorable *Brady* violation claim.[18]

(13) A *Brady* violation occurs when there is "suppression by the prosecution of evidence favorable to the accused . . . where the evidence is material either to guilt or to punishment, irrespective of the good faith or bad faith of the prosecution."[19] This Court has made clear that:

> [i]n order for the State to discharge its responsibility under *Brady*, the prosecutor must disclose all relevant information obtained by the police or others in the Attorney General's Office to the defense. That entails a duty on the part of the individual prosecutor "to learn of any

---

[16] *Outten v. State*, 720 A.2d 547, 552-53 (Del. 1998) ("That other witnesses might have been available, alone, is insufficient to prove ineffective assistance of counsel."); *State v. Jackson*, 2014 WL 4407844, at *7 (Del. Super. Sept. 3, 2014), *aff'd*, 2015 WL 5679639 (Del. Sept. 25, 2015).

[17] Super. Ct. Crim. R. 61(i)(3).

[18] Super. Ct. Crim. R. 61(i)(5).

[19] *Brady v. Maryland*, 373 U.S. 83, 87 (1963).

favorable evidence known to the others acting on the government's behalf in the case, including the police."[20]

There are three components to a *Brady* violation: "(1) evidence exists that is favorable to the accused, because it is either exculpatory or impeaching; (2) that evidence is suppressed by the State; and (3) its suppression prejudices the defendant."[21]

(14) Johnson has not established a colorable claim that the State committed a *Brady* violation. The Superior Court found that "the detective involved with the case testified on cross-examination that he attempted to track Jamal down but was unable to, and did not know anything other than his first name."[22] Moreover, the detective testified that he did not obtain Jamal's cell phone number and that there was no other evidence that led him to any new suspects. Johnson has not shown the existence of other evidence related to Jamal that could have been suppressed by the State. Therefore, the Superior Court properly denied the *Brady* claim.

(15) Johnson next claims that the alleged errors cumulatively resulted in an unfair trial. Where there are multiple errors in a trial, this Court weighs their cumulative effect to determine if, combined, they are "prejudicial to substantial

---

[20] *Wright v. State*, 91 A.3d 972, 988 (Del. 2014) (quoting *Kyles v. Whitley*, 514 U.S. 419, 438 (1995)).
[21] *Starling v. State*, 882 A.2d 747, 756 (Del. 2005).
[22] *Johnson*, 2015 WL 1059198, at *5.

rights [so] as to jeopardize the fairness and integrity of the trial process."[23] Because all of Johnson's assignments of error are without merit, his claim of cumulative error also fails.

(16) Johnson's final claim is that the Superior Court erred in denying his request for an evidentiary hearing for his claims of (a) ineffective assistance of counsel for failure to object to the admission of Napier's 3507 statement; and (b) a *Brady* violation. The Superior Court has discretion to determine whether to hold an evidentiary hearing.[24] "It is settled that the Superior Court is not required to conduct an evidentiary hearing for a Rule 61 motion if, on the face of the motion, it appears that the petitioner is not entitled to relief."[25] The Superior Court did not abuse its discretion in denying Johnson's motion for an evidentiary hearing. The record was sufficient to establish both that Napier's statement was voluntary and that Johnson could not make a colorable *Brady* claim for evidence that did not exist. Therefore, an evidentiary hearing was unnecessary.

NOW, THEREFORE, IT IS ORDERED that the judgment of the Superior Court is AFFIRMED.

BY THE COURT:

/s/ *Collins J. Seitz, Jr.*
Justice

---

[23] *Hoskins*, 102 A.3d at 735 (quoting *Turner v. State,* 5 A.3d 612, 615 (Del. 2010)); *Wright*, 91 A.3d at 993-94.
[24] Super. Ct. Crim. R. 61(h)(1).
[25] *Hawkins v. State*, 839 A.2d 666 (Del. 2003) (Table).